A05A1290. KEOWN v. THE STATE.
(620 SE2d 428)

ELLINGTON, Judge.

A Cherokee County jury found Gary Keown guilty beyond a reasonable doubt of rape, OCGA § 16-6-1; three counts of aggravated child molestation, OCGA § 16-6-4; and aggravated sexual battery, OCGA § 16-6-22.2. Following the denial of his motion for a new trial, Keown claims that he received ineffective assistance of counsel and that the evidence was insufficient as to two counts of aggravated child molestation. Finding no error, we affirm.

1. Keown contends his trial counsel's assistance was ineffective because counsel elicited testimony that Keown took a polygraph test and then failed to offer evidence that Keown passed the test.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "Trial strategy and tactics do not equate with ineffective assistance of counsel." (Citation and footnote omitted.) *Hazelrigs v. State*, 255 Ga. App. 784, 786 (2) (567 SE2d 79) (2002). Further,

[s]trategic and tactical decisions are the exclusive province of the attorney after consultation with the client. Such decisions made after thorough investigation are virtually unchallengeable, providing no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them. Deciding which defense witnesses to call is a matter of trial strategy and tactics. And declining to present evidence to preserve the final word in closing argument is a well-recognized trial tactic.

(Footnotes omitted.) *Leonard v. State*, 268 Ga. App. 745, 748 (2) (603 SE2d 82) (2004).

The record shows the following undisputed facts. Keown's pretrial counsel and the prosecutor entered into a stipulation for the admissibility of polygraph results. A special agent of the Georgia Bureau of Investigation administered a polygraph test regarding the allegations contained in the indictment. The examiner concluded that the physiological responses which are usually indicative of deception were not detected and that Keown had been "truthful." Based on this result, the prosecution offered a negotiated guilty plea to three misdemeanor charges. The trial court rejected the negotiated sentence and allowed Keown to withdraw his guilty plea. The State filed a motion in limine to prohibit any hearsay testimony at trial regarding the results of the polygraph.

Before the case went to trial, a different lawyer began representing Keown. At the hearing on Keown's motion for new trial, his new lawyer testified that after taking over the case he met with the GBI agent who had administered the polygraph examination. The examiner described in detail the procedure and equipment, the test questions put to Keown, and the favorable result of the test. The examiner stated that there were some aspects of the test that other examiners would not have considered Keown to have passed. The examiner discussed several reasons that a person could show truthfulness on a test even though the examinee was not being truthful. One such reason was heavy consumption of alcohol, which is associated with blackouts and inability to remember one's actions. Keown was a severe alcoholic and was accused of molesting his stepdaughter while impaired by alcohol. Based on this interview, Keown's trial counsel concluded that the examiner's testimony overall would benefit the State's case more than the defense. Counsel also believed that because the examiner was a law enforcement officer he would find a way to make his testimony negative for Keown's defense. Keown and his trial counsel discussed whether to call the polygraph examiner as a witness and agreed as a matter of strategy not to do so.

At trial, the State made no reference to the polygraph test. During his cross-examination of the investigator, Keown's counsel elicited testimony that Keown took a polygraph test but did not call the examiner to testify about the result.

Under long-standing Georgia law, "upon an express stipulation of the parties that they shall be admissible, the results of a lie detector test shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have." *State v. Chambers*, 240 Ga. 76, 76-77 (239 SE2d 324) (1977). And even when, because of such an express stipulation, the result of a polygraph examination is admissible, all other evidence concerning a polygraph is "nonprobative, irrelevant and inadmissible." (Footnote omitted.) *Johnson v. State*, 272 Ga. App. 385, 386 (2) (612 SE2d 518) (2005). Nonetheless, a court will not presume prejudice whenever a jury learns only that a litigant took a lie detector but does not learn the result of the test. "[T]he mere fact that the jury is apprised that a lie detector test was taken is not necessarily prejudicial *if* no inference as to result is raised." (Citation and punctuation omitted; emphasis in original.) *White v. State*, 255 Ga. 210, 213 (6) (336 SE2d 777) (1985) (a police officer's testimony that the defendant had taken a polygraph examination raised no inference as to the result and thus did not require a mistrial).[1]

---

[1] See also *Gulley v. State*, 271 Ga. 337, 348 (16) (519 SE2d 655) (1999) (admission of portion

In this case, trial counsel's decision not to call the polygraph examiner to introduce evidence of the test result, standing alone, was made after thorough investigation and was a reasonable strategy under the circumstances. Once counsel had intentionally apprised the jury that Keown had *taken* a polygraph test, on the other hand, it was, perhaps, less than prudent not to follow through and offer evidence that Keown had *passed* the test. But, under the authorities cited above, because Keown has not shown that any inference as to the result of the polygraph was raised, Keown has shown no prejudice resulting from counsel's error. *Collins v. State,* 276 Ga. 726, 728-729 (2) (583 SE2d 26) (2003). Accordingly, there is no reasonable probability that, if the questions and answers concerning a polygraph examination had been omitted, the outcome of the trial would have been any different, and Keown fails to satisfy the second prong of the test for ineffective assistance of counsel. Id.

2. Keown contends that his conviction on two counts of aggravated child molestation must be vacated because all of the evidence supporting a finding of the offense of aggravated child molestation was "used up" in proving rape, aggravated sodomy, and one count of aggravated child molestation.

> Under OCGA § 16-1-6 (1), two offenses will merge as a matter of fact if one of them is established by proof of the same or less than all the facts required to prove the other. As with any factual merger question, the dispositive issue is whether the State "used up" its evidence in proving the crime: The actual evidence test, in effect, means that if the state uses up all the evidence that the defendant committed one crime in establishing another crime, the former crime is included in the latter as a matter of fact under OCGA § 16-1-6 (1).

(Citation and punctuation omitted.) *Leaptrot v. State,* 272 Ga. App. 587, 600-601 (4) (612 SE2d 887) (2005).

The indictment charged Keown with five offenses against the victim, all occurring between July 1, 1994 and June 20, 1995. The rape charge specified "carnal knowledge" of the victim (Count 1), the charges of aggravated child molestation specified an immoral and indecent act upon the victim which caused injury to her vaginal area

---

of defendant's statement that he had taken a polygraph did not raise an inference about the result and thus did not require a mistrial); *Hayes v. State,* 244 Ga. App. 12, 14-15 (4) (534 SE2d 577) (2000) (statement by defendant's ex-wife during cross-examination that "I think he was picked up for a lie detector test," did not raise any inference as to the result and thus did not require a mistrial).

(Count 2), an act of sodomy involving Keown's mouth and the victim's vaginal area (Count 3), and an act of sodomy involving Keown's penis and the victim's anal area (Count 4), and the charge of aggravated sexual battery specified penetration of the victim's vagina with a foreign object (Count 5). According to Keown, viewed most favorably to the verdict, the record showed a single incident of digital penetration, a single incident of intercourse, and a single incident of oral sodomy.

On the contrary, the evidence at trial included evidence of many incidents of abuse over a one-year period when the victim was nine years old. The victim described at least two incidents in which Keown had sexual intercourse with her, at least one incident in which he licked her vaginal area, at least two incidents in which Keown anally sodomized the victim, and at least three incidents in which he digitally penetrated her vagina. Finally, there was medical evidence of injury to the victim's hymen. The evidence was sufficient for a rational trier of fact to find Keown guilty beyond a reasonable doubt of all five counts charged, and the evidence supporting any one count was not "used up" in proving any other count. Accordingly, this claim of error lacks merit. *Payne v. State*, 269 Ga. App. 662, 664 (605 SE2d 75) (2004); *Eggleston v. State*, 247 Ga. App. 540, 543-544 (3) (544 SE2d 722) (2001); *Minter v. State*, 245 Ga. App. 327, 330 (4) (537 SE2d 769) (2000).

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED AUGUST 17, 2005.

*Gregory A. Hicks*, for appellant.
*Garry T. Moss, District Attorney, Wallace W. Rogers, Jr., Assistant District Attorney*, for appellee.